IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PAUL OSCAR OLSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> OFFICIALS OF IDOC, JOHN DOE - ) <br> ISCI Classifying Officer, THOMAS ) <br> BEAUCLAIR and/or VAUGHN ) <br> KILLEEN, RANDY BLADES - Warden ) <br> of ISCI, JOHN/JANE DOE - All ISCI ) <br> Medical Staff, PHILIP VALDEZ - ) <br> Warden ICC, SUSAN BAJOVICH - ) <br> Director of ICC Medical, JOHN/JANE ) <br> DOE - All Medical Staff, ) <br> ) <br> Defendants. ) <br> _____) | Case No. CV-05-485-S-BLW <br><br> **MEMORANDUM ORDER** |

Pending before the Court in this prisoner civil rights case are the following Motions: IDOC Defendants' Motion to Unseal Documents (Docket No. 25), ICC Defendants' Motion for Joinder (Docket No. 26), ICC Defendants' Motion to Dismiss (Docket No. 27), IDOC Defendants' Motion to Dismiss (Docket No. 29), and Plaintiff's Motion to Stay (Docket No. 32).

Having reviewed the record in this matter, and having considered the written arguments of the parties in the briefing, the Court concludes that oral argument is unnecessary. Accordingly, the Court enters the following Order.

**MEMORANDUM ORDER**  1

# BACKGROUND

On or about April 25, 2005, Plaintiff, an Idaho Department of Correction (IDOC) inmate, was working as a janitor at the Idaho State Correctional Institution (ISCI). He was walking up stairs with a bucket of water when he fell backward onto the floor. His back was x-rayed on or about April 28, 2005. He alleges that Dr. Clyde and Dr. Benjamin told him he needed back surgery, but that after they left their position at the prison, he found out that his surgery had never been scheduled. On or about March 31, 2006, Plaintiff was transferred to the Idaho Correctional Institution (ICC), a private prison under contract with the IDOC, where he also alleges that he received inadequate medical care. To date, the back surgery has not taken place.

## DEFENDANTS' MOTIONS TO DISMISS

**A.     Standard of Law**

Both sets of Defendants allege that Plaintiff failed to exhaust his administrative remedies prior to filing his lawsuit. Pursuant to the Prison Litigation Reform Act of 1995 (PLRA),[1] a prisoner is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to

---

[1] 110 Stat. 1321-71, *as amended*, 42 U.S.C. § 1997e, *et seq*.

**MEMORANDUM ORDER  2**

bringing suit in federal court." *Woodford v. Ngo*, 126 S.Ct. 2378, 2384 (2006).[2]  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 127 S. Ct. 910, 918-19 (2007).  The *Jones v. Bock* Court noted the important policy concern behind requiring exhaustion is that it "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 914.

Where there is an "informal[]" and "relative[ly] simpl[e]" prison grievance system, prisoners must take advantage of it before filing a civil rights complaint.  *Woodford v. Ngo*, 126 at 2393.  In *Woodford v. Ngo*, the prisoner had filed his grievance within six months of the incident at issue, rather than within fifteen days as required by the California Prison grievance system.  *Id*. at 2383-84.  The Supreme Court rejected the Ninth Circuit's determination that the prisoner "had exhausted administrative remedies simply because no such remedies remained available to him." *Id*. at 2384.

Failure to exhaust remedies is an affirmative defense that should be brought as an unenumerated 12(b) motion.  *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003).  In deciding a motion to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact.  *Id.* at 1119-20.  Defendants bear the burden of proving failure to exhaust.  *Brown v. Valoff*, 422 F.3d 926

---

[2] *Cf. Jones v. Stewart*, 457 F.Supp. 2d 1131, 1136-37 (D. Nev. 2006) (if, *at every level of administrative review available*, prison officials review the merits of a grievance that does not meet the applicable procedural rules, such as timeliness, the prisoner has satisfied the administrative exhaustion requirement of *Woodford v. Ngo*).

**MEMORANDUM ORDER  3**

(9th Cir. 2005).

**B.     Discussion**

The IDOC has a relatively simple grievance procedure. The inmate first submits an inmate concern form, then a grievance, and then an appeal of the grievance. *See Affidavit of Jill Whittington and IDOC Policy 316 and IDOC Division of Operations Directive 316.02.01.001* (Docket No. 29-3).

Here, there is no evidence that Plaintiff ever submitted a grievance about the allegedly inappropriate medical care for his back. He asserts several arguments to excuse his failure to exhaust administrative remedies. Plaintiff has no facts to support his contention that there is no grievance procedure at ISCI. The IDOC Policy and Directive submitted by Defendants shows that there was a grievance policy in place at the time of Plaintiff's April 2005 accident. *See Whittington Affidavit*, at ¶ 4. Plaintiff used this same grievance system one year later to file an Inmate Grievance Form on April 25, 2006, requesting copies of his medical file.

Plaintiff next contends that, if there is a grievance procedure at ISCI, it is ineffective "because it follows the same pattern as does [the] I.C.C. grievance system." *Plaintiff's Response to Motion to Dismiss*, at p. 2 (Docket No. 31). He points to another prisoner's case where Magistrate Judge Mikel H. Williams found the ICC grievance system inadequate with respect to its failure to include instructions or a logging system for *resubmitted grievances*, and he argues that the reasoning of that case should apply to his facts. *See Stover v. Corrections Corp. of America*, Case No. CV02-418-S-MHW

**MEMORANDUM ORDER  4**

(Docket No. 77)  However, Plaintiff's facts are significantly different from the facts in *Stover*.  Here, the prison did not require Plaintiff to resubmit a grievance, and he did not in fact resubmit a grievance.  This argument is without basis.

Plaintiff next contends that there is no proper tracking system of copies, receipts, or processing, thereby making it impossible for prisoners to prove that they filed concern forms or grievances.  To the contrary, the prison has a logging system for grievances.  *See Whittington Affidavit*, at ¶ 9.  The grievance system also uses a multi-part form for both concern forms and grievances that allows the inmate to keep a copy.  If a plaintiff can show that he filed a grievance (because he has a copy), then the issue becomes whether the grievance was simply never answered.  After *Jones v. Bock*, several district courts have determined that a prison's failure to respond to a timely-submitted grievance within the procedure's specified time frame for a response is the equivalent of exhaustion of administrative remedies.  *See Harden v. South Carolina Dept. of Corr.*, 2007 WL 675632, at *3 (D.S.C. 2007); *Stewart v. Tai*, 2007 WL 1008024, at *3 (D. Mich. 2007).  This argument does not apply to Plaintiff's set of facts, because Plaintiff never filed a grievance.

Plaintiff contends that his many written Health Services Request forms to the medical department about his pain should be considered "Plaintiff's grievance process."  *Response*, at p. 3.  He contends that "[t]his was the only way he understood on how to get relief - yet was only given Tylenol on many occasions for pain and then summarily dismissed."  *Id*.  He asserts that the medical department should have given him proper

**MEMORANDUM ORDER  5**

treatment without having to file grievances. While that may be the basis for the merits of his claims, it is not an appropriate argument in the context of exhaustion of administrative remedies. The Supreme Court has rejected the argument that administrative remedies do not have to be exhausted if doing so would be futile. *See Booth v. Churner*, 532 U.S. 731 (2001).

Plaintiff also alleges that he could not obtain a copy of his medical records until well after the accident. However, having a copy of the medical records is not required to file a grievance.

Plaintiff also alleges that he had a heart attack in November 2005, and that he was in recovery through February 2006 at St. Alphonsus Hospital. However, because Plaintiff had only fifteen (15) days after he learned the prison medical department had not scheduled his back surgery (which was before his heart attack), the grievance should have been submitted well before his heart attack. Thus, the period of time after his heart attack is not relevant to the exhaustion issue.

Plaintiff also alleges that he operates at a diminished mental capacity, and that his serious physical health problems compounded his already existing diminished capacity. However, Plaintiff was able to file a notice of tort claim of April 27, 2005, within two days of his accident. There is nothing in the record to suggest that he could not have filed a grievance during this same time period. *See id.* at p. 29.

Plaintiff further alleges that the intent of the grievance system is for use with prisoners who have "normal operating minds," and that because of his diminished

**MEMORANDUM ORDER  6**

capacity and other factors, the plaintiff should not be expected to meet its exactness of performance.  Plaintiff argues that he has submitted medical records showing that he has a "childlike mind," that he receives antipsychotic drugs to treat serious emotional and mental conditions, and he states that he has been diagnosed as being "borderline retarded."  *Response*, at p. 5.

The Court notes that Plaintiff has submitted nothing to date to show that he is unable to understand how to request medical care or how to file and maintain a civil rights action.  It appears that Plaintiff's emotional and mental conditions are stabilized with medications.  His psychological evaluation notes that "his non-verbal I.Q. is significantly higher than his verbal I.Q. as he is barely able to write and reads very poorly."  However, for purposes of administrative exhaustion, Plaintiff's reading and writing skills appear adequate.  The Court notes that Plaintiff appropriately completed 28 written Health Services Request Co-Pay Forms both before and after the April 2005 accident.  *See Plaintiff's Exhibits*, Exhibit 16-3.  Even though Plaintiff's requests contained various spelling errors, it is clear that he was able to make adequate requests for his health care needs in writing.  *See Stewart*, 2007 WL 1008024, at *3 n.2 ("Plaintiff stated in his grievance that he had been too ill to "proceed with any actions" earlier.  However, his attachments to his Complaint show that he was well enough to write many letters to his mother during the time period in question explaining his alleged suffering due to the discontinuation of his medication. Therefore, the Court finds that his illness did not prevent him from timely grieving this issue.").

**MEMORANDUM ORDER  7**

### C. Conclusion

The Court concludes that Plaintiff did not exhaust his administrative remedies prior to filing his Complaint. The prison has a fairly simple, long-standing grievance process that Plaintiff failed to use. Plaintiff has not brought forward sufficient evidence showing that he either substantially complied with the grievance procedure or that adequate excuse existed for not using the system. The Supreme Court has been very clear that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 127 S. Ct. at 918-19. As a result, the Court shall dismiss Plaintiff's claims.

### OTHER PENDING MOTIONS

As a result of the dismissal of this case, IDOC Defendants' Motion to Unseal Documents (Docket No. 25) and ICC Defendants' Motion for Joinder (Docket No. 26) are moot. In any event, these filings consist mainly of Plaintiff's criminal mental health evaluation and his prison medical records, which Defendants have in their possession or control. Another item in the sealed records is a statement of Plaintiff's case submitted by Plaintiff's inmate legal aid, who wishes to remain anonymous in this action; because the Court is dismissing this action, it is not necessary to provide the statement to Defendants.

Plaintiff has filed a Motion to Stay (Docket No. 32). He requests that the Court appoint counsel in this case, and he has submitted his medical records to demonstrate that he qualifies for counsel. Although the psychological evaluation shows that Plaintiff has somewhat of a diminished capacity, and that he does not read or write well, Plaintiff has

**MEMORANDUM ORDER  8**

been able to adequately make written requests for his health care needs, file pre-litigation tort claim notices, and to litigate this action. Therefore, at this time, he does not meet the criteria for appointment of counsel. In addition, because the Court has determined that Plaintiff had the capacity to exhaust his administrative remedies, but failed to do so, this case is subject to dismissal, and appointment of counsel would not serve any purpose. Plaintiff's Motion to Stay and request for appointment of counsel shall be denied.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

A.  IDOC Defendants' Motion to Unseal Documents (Docket No. 25) is MOOT.

B.  ICC Defendants' Motion for Joinder (Docket No. 26) is MOOT.

C.  ICC Defendants' Motion to Dismiss (Docket No. 27) is GRANTED.

D.  IDOC Defendants' Motion to Dismiss (Docket No. 29) is GRANTED.

E.  Plaintiff's Motion to Stay (Docket No. 32), and request for appointment of counsel, are DENIED.

F.  Plaintiff's case is DISMISSED.



DATED: **July 25, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM ORDER  9**